**NOWSCO SERVICES DIVISION OF
BIG THREE INDUSTRIES,
INC., Appellant,**

**v.**

**Chris D. LASSMAN, Appellee.**

**No. C14–82–728CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 12, 1984.
Rehearing Denied Sept. 13, 1984.
Second Rehearing Denied Jan. 24, 1985.

Theodore Goller, Fulbright & Jaworski, Henry P. Giessel, Talbert, Giessel, Stone, Barker & Lyman, Mayo J. Thompson, Houston, for appellant.

William R. Edwards, Edwards & Perry, Corpus Christi, for appellee.

Before JUNELL, MURPHY and SEARS, JJ.

## OPINION

SEARS, Justice.

Chris Lassman, Appellee, brought a maritime negligence action against Jaray, Inc., Nitrogen Oilwell Service Company, Fairbanks Well Service (Fairbanks), Mitchell Energy Production Corporation (Mitchell), Mitchell Energy Corporation, Intercoastal Operating Company, Intercoastal Industries, Inc. and Nowsco Services Division of Big Three Industries, Inc., Appellant, for personal injuries sustained by him while working as a Jones Act seaman on an oil well drilling barge in September, 1978. Fairbanks cross-claimed against Mitchell and Appellant for indemnity and contribution. Mitchell cross-claimed against Fairbanks and Appellant. Appellant cross-claimed against Fairbanks but was denied leave to file a late cross-claim against Mitchell. The trial court directed a verdict in favor of Fairbanks and Mitchell.

■ TEX.REV.CIV.STAT.ANN. art. 2212a (Vernon Supp.1984), gives a defendant the opportunity to request issues concerning the negligence of co-defendants if such issues are supported by pleadings. In this case, however, Appellant failed to timely file any pleadings against Mitchell and an issue inquiring of Mitchell's negligence, if any, was not submitted. Consequently, Appellant was not awarded contribution or indemnity from Mitchell and is therefore liable for the entire $745,759.46 awarded Appellee by the jury. Appellant's Motion for New Trial and/or Remittitur was overruled by the trial court. On appeal, Appellant does not contest its liability to Appellee. Rather, Appellant argues the trial court erred in granting Mitchell's Motion for Directed Verdict, claims a statutory right to contribution from Mitchell, although Mitchell was dismissed from the suit and Appellant had no pleadings against Mitchell, and contests the failure of the trial court to grant a new trial and/or the court's refusal to order a remittitur. We affirm.

Appellee was injured while working as a derrickman for Fairbanks, the drilling con-

tractor in workover operations on Mitchell's oil lease. Mitchell contracted with Appellant to send a coil tubing unit to the offshore rig. The unit was to run a continuous length of one-inch diameter steel tubing into the hole and inject nitrogen through the tube in order to flush debris out of the well. The accident occurred as Appellant attempted to move the injector head from a barge to the well platform with a cherrypicker. The cherrypicker had a hydraulic boom which both rotated and telescoped. Appellant used a chain on the cherrypicker which was designed to stabilize the injector head but not to lift it. The chain broke in the lifting attempt and the injector head fell, coming to rest partially on top of the pump shed on the platform. The crane operator then attempted to swing the boom laterally in order to free the head from the shed. Since the boom was telescoped to its fullest and could not lift the head straight up, Appellant attempted to swing the boom to move the head. Appellee saw a piece of coil tubing on the truck, which he thought might interfere with the lateral movement of the crane's boom, and was attempting to move the tubing when the injector head swung back and struck the rear of the truck. The truck was overturned and Appellee became entangled in the hydraulic hoses and was pulled into the bay. A roughneck dove in the bay, disentangled Appellee from the hydraulic lines and pulled him to safety. Appellee sustained a compression fracture of the fourth and fifth vertebrae in the thoracic area of the back and was hospitalized for two or three weeks.

■ In its first point of error, Appellant contends that the trial court erred in granting Mitchell a Directed Verdict, alleging that sufficient evidence was introduced from which the jury could have found Mitchell liable to Appellee on theories of negligence or unseaworthiness. It argues that it has standing to appeal from the Directed Verdict in favor of Mitchell because it is an aggrieved party which lost its statutory right to contribution from a joint tortfeasor when the Directed Verdict was granted. We disagree. Appellant has no standing to appeal from the judgment for Mitchell because it had no trial pleadings against Mitchell.

■ TEX.REV.CIV.STAT.ANN. art. 2212a, § 2(g) (Vernon Supp.1984), provides:

All claims for contribution between named defendants in the primary suit shall be determined in the primary suit, except that a named defendant may proceed against a person not a party to the primary suit who has not effected a settlement with the claimant.

This section changed prior law by making a cross-claim for contribution mandatory when the cross-claimant has been made a party to the suit by the plaintiff. *See Helicoptoros Nacionales de Colombia, S.A. v. Hall,* 616 S.W.2d 247, 252 (Tex.Civ.App.—Houston [1st Dist.] 1981), *rev'd on other grounds,* 638 S.W.2d 870 (Tex.1982), *rev'd,* —— U.S. ——, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); DORSANEO, TEXAS LITIGATION GUIDE § 291.04[2][a]. Contribution from joint tortfeasors in negligence actions is a statutory remedy in Texas and, like any other claim, must be supported by sufficient pleadings. As noted in *Beaumont Coca Cola Bottling Co. v. Cain,* 628 S.W.2d 99, 101 (Tex.Civ.App.—Beaumont 1981, writ ref'd n.r.e.) (emphasis in original), *"all* rights of contribution must be pleaded and determined in the primary suit or be barred unless such right comes within the language found in the last phrase of the subsection". Since Appellant had no pleadings against Mitchell, we overrule point of error one.

In its second point of error, Appellant claims that the trial court erred in failing to grant a new trial or to order a remittitur because the verdict and judgment is manifestly excessive. Appellant compares amounts awarded to plaintiffs in other cases and concludes that a remittitur must be ordered because Appellee's injury is less severe. We disagree with Appellant's conclusions as to the severity of Appellee's injuries and as to what the applicable standard of review is.

The basic standard of review was articulated in *Flanigan v. Carswell*, 159 Tex. 598, 324 S.W.2d 835 (1959). It stated:

'All the Court of Civil Appeals can do, and all that is required of it to do ... is to exercise its sound judicial judgment and discretion in the ascertainment of what amount would be reasonable compensation for the injury sustained, and treat the balance as excess ... [Having] decided upon an amount that would be reasonable compensation ... it should authorize a remittitur of the excess ... in accordance with its sound judgment.'

*Id.* 159 Tex. at 606, 324 S.W.2d at 840 (cite omitted). Later cases have amplified this holding. In *McMillin v. L.D.L.R.*, 645 S.W.2d 836, 841 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.), the court stated that in applying this standard, only evidence favorable to the jury's award is to be considered by the court. *See also Wharf Cat, Inc. v. Cole*, 567 S.W.2d 228 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). In *Amoco Production Co. v. Thompson*, 657 S.W.2d 824, 831 (Tex.App.—Corpus Christi) (opinion on Motion for Rehearing) (emphasis added), *rev'd, Ideal Lease Service, Inc. v. Amoco Production Co.*, 662 S.W.2d 951 (Tex.1983),[1] the court also noted that:

The measure of damages in a personal injury case is not subject to precise mathematical calculation. *Rosenblum v. Bloom*, 492 S.W.2d 321, 325 (Tex.Civ.App.—Waco 1973, writ ref'd n.r.e.); *Houser v. Sunshine Laundries & Dry Cleaning Corp.*, 438 S.W.2d 117, 120 (Tex.Civ.App.—San Antonio 1969, writ ref'd n.r.e.). Matters of past and future pain and suffering, disfigurement and physical impairment are necessarily speculative, and *it is particularly within the province of the jury to resolve these matters and determine the amounts attributable thereto. Rosenblum v. Bloom, supra.* Each case must be measured by its own facts, and considerable latitude must necessarily be vested in the jury. *Id.; Houser v. Sunshine Laundries & Dry Cleaning Corp., supra.*

In *Allen v. Whisenhunt*, 603 S.W.2d 242 (Tex.Civ.App.—Houston [14th Dist.] 1980 writ dism'd), this court held that absent some evidence of jury bias or prejudice, a court "must give every intendment to the evidence supporting the verdict" and stated that the amount the trial or appellate court would have awarded is irrelevant. *Id.* at 245. Finally, in *Texas Farm Products Co. v. Stock*, 657 S.W.2d 494 (Tex.App.—Tyler 1983, writ ref'd n.r.e.) (opinion on Motion for Rehearing), the court stated that if passion, prejudice or other improper motivation which controlled the jury's award of damages is affirmatively shown, the case must be reversed and remanded. Absent such a showing, a remittitur is proper. The court explained that the mere excessiveness of the verdict is insufficient to establish that the jury was motivated by passion and prejudice unless the amount awarded is shocking to the judicial conscience. In that case, reversal and a new trial is proper. *Id.* at 505.

We must therefore review the evidence concerning Appellee's injuries. As stated, Appellee was injured while working as a derrickman on an offshore oil rig. He became entangled in the hydraulic hoses of the crane operated by Appellant and was pulled underwater in the bay. Appellee testified that he held his breath for as long as he could, involuntarily inhaled water and then passed out. A roughneck saved Appellee's life by diving into the bay, freeing him and pulling him to safety. Appellee suffered a 70–75% compression of his fourth thoracic vertebra and was in the hospital for several weeks as a result of his injuries. For some time after the injury, he had recurring nightmares about drowning.

Appellee testified that he enjoys waterskiing and motorcycle riding but has discontinued both activities on the advice of

---

1. Thompson settled with Amoco after the court of appeals decision was rendered and was not a party to the *Ideal* appeal.

his doctor. He has been cautioned that he could further injure himself if he continues to participate in these activities, which injury could lead to paralysis or inability to work. Appellee has been able to continue working because he chooses to tolerate the pain he suffers daily.

Appellee's physician testified that Appellee had early symptoms indicating an injury to his spinal cord which could have resulted in weakness or complete paralysis of his legs. Although these results never manifested, re-injury could result in paralysis. The physician further testified that Appellee's vertebra will never regain its normal height, that the problem cannot be corrected surgically and that he is in the best condition he ever will be in. His symptoms will be similar for the next ten to fifteen years. However, they will worsen as he ages because his injury will aggravate normal degenerative problems. As this occurs, the intensity of pain will increase. Additionally, any increase in current activities will trigger a higher level of pain. He stated that Appellee cannot avoid the pain associated with working but that he will be able to continue working so long as he can, or will, tolerate the pain.

Under these facts, the $745,759.46 awarded to Appellee does not shock our conscience. We find no evidence of jury prejudice or passion. Further, we do not believe the verdict is excessive or that a remittitur is proper; rather, the facts developed at trial convince us that the evidence is sufficient to support the jury's award. We overrule point of error two.

The judgment of the trial court is affirmed.

## OPINION ON SECOND MOTION FOR REHEARING

On Appellant's Second Motion for Rehearing, Leave to File the Second Motion for Rehearing is hereby granted, the Second Motion for Rehearing is hereby overruled, and the original opinion affirming the judgment of the trial court is herein reaffirmed. However, the following opinion is necessary due to the complexity of the problems presented by this Motion for Rehearing.

On July 12, 1984, this court rendered its opinion affirming the judgment of the trial court. On July 27, 1984, Appellant received leave to file and filed a Motion for Rehearing. On September 13, 1984, this court, without opinion, overruled Appellant's first Motion for Rehearing and the clerk's office sent notice to the attorneys for the three appellees. However, Appellant's name was inadvertently removed from the clerk's computerized mailing list, and Appellant received no notification that this court had overruled its Motion for Rehearing.

On November 5, 1984, in a telephone conversation with an attorney for one of the Appellees, Appellant was advised for the first time that his Motion for Rehearing had been overruled. On the following day, November 6, 1984, Appellant filed a Motion for Recall of Mandate and Second Motion for Rehearing, and Appellant later filed a Motion for Leave to File the Second Motion for Rehearing. In addition to the allegation that Appellant failed to receive notification by the clerk's office that the court overruled its Motion for Rehearing, Appellant further alleges that he has been attorney of record for Appellant since the party's original answer was filed in district court. Appellant's attorney alleges that at all times his name has appeared on all legal instruments and briefs filed for or on behalf of Appellant in this court as well as in the trial court. No other attorney has at any time represented Appellant, nor was any other attorney at any time subject to notice of any actions taken by this court.

This court has investigated the allegations of the attorney for Appellant and find them to be true and correct. We have discovered no reason for the deletion of Appellant's attorney's name from the clerk's mailing list, nor have we been able to determine the exact point in time at which his name was removed from said list.

At the time of the filing of Appellant's Second Motion for Rehearing, fifty-three

days had elapsed since entry of the court order overruling Appellant's first Motion for Rehearing. The time for filing application for Writ of Error to the Supreme Court of Texas has therefore expired. Tex. R.Civ.P. 468. *See also Reynolds v. Dallas County*, 146 Tex. 372, 207 S.W.2d 362 (1948), for an example of refusal to expand time for filing writ of error even though good cause was shown.

We find that the loss of such a right was not occasioned by any mistake, neglect or fault on the part of Appellant or its attorney. We further find that Appellant will be greatly prejudiced and deprived of due process of law by the loss of his right to apply to the Supreme Court for a Writ of Error unless this court accepts the late filing of Appellant's Second Motion for Rehearing.

An extension of time may be granted for the late filing of a motion for rehearing if the party seeking the extension files a motion reasonably explaining the need therefor within fifteen (15) days of the date the opinion was rendered. Tex.R.Civ.P. 21c and 458(a). *See B.D. Click Co. v. Safari Drilling Corp.*, 638 S.W.2d 860 (Tex.1982), for a discussion of the applicability of Rule 21c. *See also* Tex.R.Civ.P. 5. We are aware that Rule 21c has been held inapplicable to a second motion to extend time for filing the statement of facts, using the rationale that the first motion to extend was made timely pursuant to Rule 21c and the court retained jurisdiction to consider the second motion to extend although it was not filed within fifteen (15) days of the time allowed by the first extension. *Gibraltar Savings Association v. Hamilton Air Mart, Inc.*, 662 S.W.2d 632 (Tex.App.—Dallas 1983, no writ). We decline to apply this rationale to motions for rehearing.

■ A study of the notice requirement of the Texas Rules of Civil Procedure reveals that Rule 456 imposes a duty on the clerk of each Court of Appeals to mail or deliver a copy of a decision of the court to the clerk of the trial court, the trial judge, and to one attorney for plaintiff and one attorney for defendant. It further provides:

> If [sic] shall also be the duty of the clerks of said appellate courts, within ten days after rendition of a decision, to mail or deliver to one of the attorneys for the plaintiffs and one of the attorneys for the defendants a copy of the judgment as entered in the minutes of the appellate court.

Rule 456 was changed by Amendment, effective January 1, 1976, to require clerks of appellate courts to mail or deliver copies of judgments as well as opinions to attorneys. Further, Rule 457 provides:

> When the Court of Appeals renders judgment or grants or overrules a motion for rehearing, the clerk shall immediately give notice to the parties or their attorneys or record of the disposition made of the cause or of the motion, as the case may be. The notice shall be given by first-class mail and be so marked as to be returnable to the clerk in case of non delivery.

We have been unable to find any case history or any interpretation or application of Rule 456 or Rule 457. However, we believe the legislative intent was to prevent such an injustice as is presented to us in this case.

The trial courts have express power to protect a party from denial of due process by failure to receive notice of a final order. Tex.R.Civ.P. 306a(3), provides that the clerk of a court *shall* immediately give notice to the parties of the signing of any appealable order. And further, Tex.R. Civ.P. 306a(4), provides that when the clerk fails to notify a party adversely affected by the signing of an appealable order, the time for appealing or filing any motions or bonds in connection therewith shall begin on the date actual notice is received.

■ We believe this court has inherent power to prevent a denial of due process. We believe further that the failure to provide a tolling of appellate timetables, when the clerk fails to notify a party pursuant to Rules 456 and 457, is an oversight on the part of the persons who drafted and

amended these rules, and was in no way intended as a hole in the appellate process through which the inherent rights of due process could fall and be forever lost.

■ We therefore hold that the provisions of Rule 456 and Rule 457 are mandatory and impose a duty upon the clerk of an appellate court to notify the attorney of record for each party of any action by the court in rendering judgment or granting or overruling a motion for rehearing. We further hold that in the event the clerk of a court of appeals fails to provide such notice to the attorney of a party prior to the expiration of the time period for the next step in the appellate process, the time for taking any further steps in the appellate process in relation to the action taken by the court shall be tolled until such time as the attorney for the party has actual knowledge of the said action of the court of appeals. All time for filing requirements thereafter shall commence to run from the date of actual knowledge of the said action taken by the court of appeals.

■ We further hold that Appellant's Second Motion for Rehearing was timely filed following notice that this court had overruled Appellant's first Motion for Rehearing. To hold otherwise would constitute a denial of Appellant's constitutional right to due process of law.

Leave to File Appellant's Second Motion for Rehearing is granted and this court's mandate heretofore issued is hereby ordered to be recalled. Appellant's Second Motion for Rehearing is overruled. The original opinion of this court which affirmed the judgment of the trial court is hereby reaffirmed.